IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTOINETTE S. McNEIL : | CIVIL ACTION |
| : | |
| v. : | |
| : | NO.   04-5180 |
| JOANNE B. BARNHART, : | |
|    Commissioner of Social Security : | |

**MEMORANDUM OPINION**

J. Davis                                                                             November 10, 2005

      Presently before the Court is the appeal of Antoinette S. McNeil ("plaintiff") from a final decision of the Commissioner of Social Security ("Commissioner") denying him Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-433 (West 2005).  Both parties have filed cross motions for summary judgment.  (Doc. No. 10-11).  After referral, the Magistrate Judge recommended denying the plaintiff's motion for summary judgment.  (Doc. No. 20). Plaintiff filed objections to the Report and Recommendation of the Magistrate Judge.  (Doc. No. 21).  For the following reasons, this Court chooses not to follow the Report and Recommendation of the Magistrate Judge, vacates the decision of the administrative law judge ("ALJ"), and remands the case for a decision consistent with this opinion.

**I.  Factual and Procedural History**

      Plaintiff Antoinette McNeil ("plaintiff") was born on May 19, 1956.  Plaintiff claims that a variety of ailments compelled her to leave her position as a sales associate, stock person, and

assistance manager for Eckerd Drugs and Rite Aid Pharmacy on October 15, 2001. (Tr., at 38, 83-92). At the time, plaintiff was living with and taking care of her adolescent son. (Tr., at 98).

On April 29, 2003, plaintiff filed an application for Supplemental Security Income Disability Benefits. (Tr., at 83). Plaintiff alleged that she had been disabled since October 15, 2001 because of an array of physical impairments, including left ankle, left knee, and hip instability, cervical injury, right knee arthritis, right hand carpel tunnel syndrome, and left arm, hand, and shoulder pain. (Tr., at 18, 84). In her application, plaintiff claimed that she experiences pain during the performance of daily household chores, that she can no longer perform certain activities, such as dancing, walking, and exercising, and that she can no longer dress herself without resting. (Tr., at 99-101). Plaintiff further stated that her son performs many of the daily household activities, often times "waiting on" plaintiff. (Tr., at 98-99).

A hearing was held on April 21, 2004 before the Administrative Law Judge ("ALJ"). The evidence before the ALJ consisted of the following: plaintiff's medical records; a residual functional capacity questionnaire filled out by plaintiff's treating podiatrist, Dr. Malay, concluding that plaintiff was incapable of sitting, standing, or walking during an 8-hour workday; a residual functional capacity questionnaire completed by plaintiff's primary care physician, Dr. Bennett, concluding that plaintiff was incapable of sitting, standing, or walking for more than one hour per day during an 8-hour workday; the residual functional capacity assessment of a State Agency Examiner concluding, from a review of the record, that plaintiff was capable of standing/walking for six hours and sitting for six hours in an 8-hour workday; plaintiff's testimony concerning the nature and severity of her illness, including plaintiff's testimony that she is unable to stand without pain for more than ten minutes, that she is unable to sit without

<mark>2</mark>

pain for more than fifteen minutes, and that she struggles to perform daily household activities; and the testimony of a vocational expert who stated that plaintiff's residual functional capacity did not preclude plaintiff from performing her past jobs as a pre-school teacher, sales associate, and assistant manager. (Tr., at 17-25).

On April 30, 2004, the ALJ concluded that plaintiff was not disabled. (Tr., at 14-25). The ALJ first reasoned that plaintiff's bilateral carpal tunnel syndrome, her intractable pain syndrome, and her depression were not severe impairments; however, the ALJ did find that plaintiff's neck disorder, lower back disorder, and left ankle disorder placed substantial limitations upon plaintiff's basic work activities. (Tr., at 18-19). Analyzing the effect of these impairments, the ALJ then found that plaintiff could perform light exertional work requiring lifting and carrying twenty pounds occasionally, standing and/or walking for a total of six hours in an 8-hour workday, and sitting for a total of six hours in an 8-hour workday. (Tr., at 23). In carving out this residual functional capacity, the ALJ discredited plaintiff's testimony concerning the nature and severity of her pain as inconsistent with the objective findings in the medical record, privileging instead the conclusions of the State Agency Examiner. (Tr., at 21-23). Finally, relying upon testimony from a vocational expert as to employment possibilities for a claimant with such functional limitations, the ALJ determined that plaintiff was not disabled because she could perform her past relevant work. (Tr., at 23).

Plaintiff appealed to the Social Security Appeals Council on May 11, 2004, and, on September 14, 2004, the Appeals Council denied plaintiff's appeal. (Tr., at 4-7, 10-13). Plaintiff subsequently filed this complaint on November 10, 2004, asking the Court to reverse the findings of the ALJ and to award plaintiff disability insurance benefits as a matter of law. (Doc. No. 1).

Plaintiff filed a motion for summary judgment on February 17, 2005, and, shortly thereafter, on March 21, 2005, defendant filed its motion for summary judgment. (Doc. No. 10-11).

**II.     Discussion**

Plaintiff's motion for summary judgment identifies an array of errors in the ALJ's analysis.  First, plaintiff argues that the ALJ failed to classify plaintiff's bilateral carpel tunnel syndrome, intractable pain syndrome, and depression as "severe" impairments meeting the durational requirement.  (See Pl. Br., at 30-37).  Second, plaintiff contends that the ALJ improperly rejected both the residual functional capacity questionnaires of plaintiff's treating physicians and plaintiff's testimony in fashioning plaintiff's residual functional capacity.  (Id., at 37-45).  Third, plaintiff argues that the ALJ improperly relied upon the vocational expert's testimony regarding plaintiff's capacity to perform certain types of jobs, testimony that was based upon a vocational hypothetical that did not accurately reflect plaintiff's true residual functional capacity.  (Id., at 45-48).

The Act provides for judicial review of any "final decision of the Commissioner of Social Security" in a disability proceeding.  See 42 U.S.C. § 405(g).  The role of this Court on judicial review is to determine whether there is substantial evidence in the record to support the Commissioner's decision.  Jesurum v. Sec'y of United States Dep't of Health and Human Serv., 48 F.3d 114, 117 (3d Cir. 1995).  Substantial evidence requires more than a mere scintilla of evidence, but perhaps less than a preponderance of the evidence. Jesurum, 48 F.3d at 117.   It is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richard v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

Under applicable regulations, an application for disability benefits is evaluated according to a five-step sequential process. See 20 C.F.R. § 416.920.  First, the ALJ determines whether the claimant is engaged in a "substantial gainful activity." Id. § 416.920(a)(4)(i).  If a claimant is engaged in a substantial gainful activity, then she is not disabled; if not, then the ALJ considers the effect of the claimant's physical or mental impairment(s). Id. § 416.920(a)(4)(ii). If the claimant has a "severe impairment" that limits his or her mental ability to do basic work activities, the ALJ then proceeds to the third step: whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. Id. § 416.920(a)(4)(iii). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. Id. If not, the ALJ then determines whether the impairment prevents the claimant from performing past work. Id. § 416.920(a)(4)(iv).  Prior to this stage, the ALJ assesses the claimant's residual functional capacity, which measures the most a claimant can do in the work setting based upon her physical or mental limitations. Id. § 416.920(a)(1) (defining residual functional capacity).  If the claimant's residual functional capacity indicates an ability to perform past work, the claimant is not disabled; on the other hand, if the claimant's residual functional capacity indicates an inability to perform past work, the ALJ proceeds to the final step. Id.  Here, the ALJ considers the claimant's residual functional capacity and her "age, education, and past work experience" to determine whether she can perform other substantial gainful work on a regular and continuing basis that exists in the national economy. Id. § 416.920(a)(4)(v).  The claimant is entitled to disability benefits only if she is unable to make an adjustment to this type of work. Id. § 416.920(g).

### A. Severity and Duration of Impairments

Plaintiff first argues that the ALJ erred by finding, at the second stage of the sequential analysis, that plaintiff's bilateral carpel tunnel syndrome, intractable pain syndrome, and depression are not severe impairments. (See Pl. Br., at 30).

In step two of the sequential process, the ALJ must determine whether plaintiff's impairment or combination of impairments is both "severe" and meets the durational requirement. See 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 416.920(c), 416.909. A claimant's burden in satisfying step two of the sequential evaluation process is a slight one, with all doubts resolved in favor of the applicant. See McCrea v. Comm'r of Social Security, 370 F.3d 357, 360 (3d Cir. 2004); Bloch on Social Security §§ 3.9 (noting that "in most cases, the duration requirement is met without difficulty"); id. § 3.11 (noting that "when properly utilized, Step Two should present little difficulty to claimants").

An impairment is not "severe" if it "does not significantly limit a claimant's physical or mental ability to perform basic work activities." 20 C.F.R. § 416.921(a). In addition, an impairment must also last for at least 12 consecutive months. See 20 C.F.R. § 416.909. Multiple impairments may be combined to satisfy the severity and durational requirements. 42 U.S.C.A. § 423(d)(2)(B) ("Commissioner shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity"); 20 C.F.R. §§ 416.922-923; see Bailey v. Sullivan, 885 F.2d 52, 60-61 (3d Cir. 1990) (invalidating Social Security Secretary's regulations that precluded combination of combined effects of unrelated impairments at second step of sequential evaluation process unless each impairment was severe and expected to last twelve months).

1.     **Intractable Pain Syndrome**

This Court finds that the ALJ's conclusion regarding the non-severity of plaintiff's intractable pain syndrome is not supported by substantial evidence.

Pain may constitute a disabling impairment. See Smith v. Califano, 637 F.2d 968, 972 (3d Cir. 1981). A thorough review of the medical record clearly confirms, by virtue of objective clinical findings, the nature and extent of plaintiff's pain arising from plaintiff's intractable pain syndrome. For instance, plaintiff's chronic pain symptomology suffuses the medical record, dating back to 2001. (See Tr., at 161-162, 181-185, 200, 216-221, 225-226, 235-239). Indeed, the record clearly indicates that plaintiff has experienced generalized joint and muscle pain throughout her body since 2001, including in plaintiff's upper extremities, knees, hip, ankles, shoulders, and neck. (See Tr., at 130, 200, 225-226, 227, 228, 229, 241, 251, 253, 303). Diffuse tenderness was diagnosed on multiple occasions, including throughout her neck, shoulders, spine, knee and ankle joints, and wrists. (Tr., at 128, 131, 162, 171, 303). Various anti-pain medications, such as Duragesic, Hydrocodone, Trazodone, and Nuerontin, and various anti-pain treatments, such as cervical facet injections and cervical epidural steriod injections, failed to provide significant improvements in plaintiff's pain-related symptoms. (Tr., at 102, 118, 161-162, 164, 171, 220-221); see McCrea, 370 F.3d at 361 (nature of plaintiff's treatment history, including steroid injections, helps establish severity of plaintiff's impairments). The Pain Medicine Center of the University of Pennsylvania (the "Pain Center") found plaintiff to walk with a slow, antalgic gait. (Tr., at 162, 171).[1] Furthermore, although objective diagnostic testing

---

[1]This characterization of plaintiff's walking style contradicts the ALJ's finding that "the record does not indicate that the claimant has a significantly abnormal gait." (Doc. No. 19).

7

did not always confirm the etiology of plaintiff's pain, plaintiff's treating physicians attributed plaintiff's diffuse joint and muscle pain to an array of pain-producing neurological conditions, including osteoarthritis in December 2001, cervical radiculopathy[2] in May 2002, facet arthropathy in June and August 2003, cervical and myofascial pain[3] in August 2003 and February 2004, and connective tissue disease or fibromyalgia[4] in March 2004. (Tr., at 129, 132, 162, 164, 171, 178, 200, 241-242).

In addition, plaintiff's treating podiatrist and primary care physician confirmed the severity of plaintiff's pain symptomology, finding that the combination of plaintiff's chronic pain-related conditions rendered plaintiff unable to perform basic daily activities. See SSR 85-28, 1985 WL 56856, at *3 (to satisfy step two of sequential evaluation process, claimant need only demonstrate something more than "slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work"). For instance, in his residual functional capacity questionnaire, Dr. Malay found that plaintiff was incapable of sitting, standing, or walking for any period of time during an eight-

---

[2] Radiculopathy is defined as "any pathological condition of the nerve roots." See American Medical Association, *Guides to the Evaluation of Permanent Impairment*, at 382, 602 (5th ed. 2001)

[3] Myofascial pain syndrome is a disorder "characterized by localized musculokeletal pain and tenderness in association with trigger points," often leading to deep and aching pain. See Eugene Braunwald (ed.), *Harrison's Principles of Internal Medicine*, at 2012 (15th ed. 2001).

[4] Fibromyalgia is "a commonly encountered disorder characterized by widespread musculoskeletal pain, stifness, paresthesia, nonrestorative sleep, and easy fatigability along with multiple tender points which are widely and symmetrically distributed." (Id., at 2010). Problematically, results of joint and muscle examinations are normal in fibromyalgia patients, and "there are no laboratory abnormalities." (Id., at 2011).

hour workday. (Tr., at 317-318). Furthermore, Dr. Bennett concluded that plaintiff could only sit, stand, and walk for one hour per day, and, although plaintiff could use her hands for repetition action, she was incapable of bending, squatting, crawling, stooping, crouching, or kneeling. (Tr., at 319-320).

The Court also rejects the ALJ's reasons for refusing to find plaintiff's intractable pain syndrome to be a "severe" impairment, independent of plaintiff's neck disorder, lower back disorder, and left ankle disorder. First, although the ALJ found that plaintiff's intractable pain syndrome "may" not last twelve continuous months because it was only recently diagnosed in early 2004, the symptoms associated with this condition have persisted since (at least) 2001. Indeed, on March 9, 2004, the Pain Center noted plaintiff's "long history of diffused muscle and joint pain." (Tr., at 161). Furthermore, to the extent that pain-related symptoms dating back to 2001 were not entirely related to plaintiff's conditions of intractable muscle and joint pain, but, instead, to other conditions, such as plaintiff's bilateral carpel tunnel syndrome, the ALJ failed to consider the combined effects of these impairments, which lasted more than twelve months. See 20 C.F.R. § 416.923 (ALJ must "consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity").

Second, the ALJ concluded that the objective laboratory findings regarding the etiology of plaintiff's intractable pain syndrome were "rather benign," and then used this conclusion to infer the non-severity of plaintiff's impairment. (Tr., at 19). The ALJ committed several errors in this analysis. For instance, the ALJ only considered the medical reports from March 2004 in evaluating the severity of plaintiff's "long history" of diffuse muscle and joint pain. (Id.). The

9

ALJ also failed to consider the symptoms of plaintiff's additional impairments, such as plaintiff's bilateral carpel tunnel syndrome and neck, lower back, and left ankle disorders, in conjunction with plaintiff's medical history of intractable pain syndrome. See 20 C.F.R. § 416.923. Furthermore, an evaluation of the record in its entirety clearly provides medical evidence of several objectively verified conditions that could reasonably expect to produce diffuse pain throughout plaintiff's muscles and joints, including *inter alia* diagnoses of osteoarthritis, radiculopathy, and cervical and myofascial pain, impressions of fibromyalgia and facet arthropathy, and findings of tenderness throughout plaintiff's body during physical examinations over a four-year period.[5] (Tr., at 129, 131, 132, 162, 164, 171, 200, 241-242, 251, 303). Finally, the Court notes that the threshold for meeting the definition of "severity" is not a very "exacting" standard, with the record clearly demonstrating that plaintiff's intractable muscle and joint pain produced symptoms with more than a minimal effect on plaintiff's ability to work. See, e.g., McCrea, 370 F.3d at 360 (noting that step two severity inquiry does not impose an exacting burden on plaintiff, as severity inquiry is merely a *de minimis* screening device to dispose of groundless claims).

---

[5] In reaching its conclusion that plaintiff's intractable pain syndrome was not a severe impairment, the ALJ also relied upon a finding that plaintiff exhibited an "exaggerated" pain response to movement in her cervical spine on February 9, 2004, which, according to the pain specialist, was difficult to decipher because of plaintiff's normal MRI. (See Tr., at 164). It is clear from the context of Dr. Dolan's report that he was not implying any untruthfulness as to plaintiff's reaction, but, instead, merely suggesting that plaintiff's reaction to movement of her cervical spine was "magnified" in intensity. Indeed, if the term "exaggerated" carried the value-laden interpretation of "hyperbolic" suggested by the ALJ, the doctor would not have followed his pronouncement of symptom exaggeration with a statement expressing uncertainty as to how to interpret plaintiff's reaction. Furthermore, the same report confirmed that plaintiff suffered from a "very complicated and chronic pain condition," which was then echoed by Dr. Rothrock of the Pain Center on March 9, 2004, who found the patient to suffer from diffused joint and muscle pain. (Tr., at 161-162).

### 2. Bilateral Carpel Tunnel Syndrome

The ALJ concluded that plaintiff's symptoms from her left-side and right-side carpel tunnel syndrome were not severe because the severity of the symptoms did not last for more than twelve consecutive months. (Tr., at 18). However, to the extent that the ALJ individualized the durational analysis of plaintiff's bilateral carpel tunnel syndrome, rather than considering the symptomology of plaintiff's bilateral carpel tunnel syndrome in conjunction with the symptomology of plaintiff's intractable pain syndrome and neck, lower back, and left ankle disorders, the Court finds that the ALJ violated the mandate to consider the effect of impairments in combination at the second stage in the sequential evaluation process. See 20 C.F.R. § 416.923; see also Cadillac v. Barnhart, 84 Fed. Appx. 163, 167 (3d Cir. 2003) (finding reversible error when ALJ fails to adequately consider the cumulative effect of claimant's impairments in determining whether these impairments meet the criteria of a disabling impairment listed in the Social Security Administrative Regulations); Segal v. Barnhart, 342 F. Supp. 2d 338, 342 (E.D. Pa. 2004) (ALJ committed reversible error when ALJ failed to consider impact of obesity and depression in combination with other impairments in determining overall severity).

### 3. Depression

This Court agrees that substantial evidence supports the ALJ's finding that plaintiff's depression was not severe. A mental impairment lacks severity if it results in no episodes of decompensation[6] and, at a maximum, only mild functional limitations in the areas of daily

---

[6]Decompensation is an "exacerbation of temporary increase in symptoms accompanied by a loss of adaptive functioning, resulting in a significant alteration in medication or the need for a more structured support system (i.e. hospitalization, half-way house)." See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(c)(4).

activities, social functioning, and concentration, persistence or pace. See 20 C.F.R. § 416.920a(c) (listing factors to determine the severity of alleged mental impairment).

The ALJ's conclusion that plaintiff's depression results in no more than mild limitations, with no episodes of decompensation, is supported by the record. (Tr., at 19). First, plaintiff never sought psychiatric treatment from a mental health professional. Second, plaintiff's symptoms never required hospitalization. Third, the record indicates that plaintiff's depression was controlled with medication. For instance, between April and August 2002, Dr. Bennett found that plaintiff was responding "well" to initial doses of anti-depressant medication. (Tr., at 222-237). Although plaintiff's feelings of hopelessness and anhedonia lingered, Dr. Bennett found plaintiff's depression and insomnia to be "improved" in March 2004. (Tr., at 207). Finally, and perhaps most importantly, plaintiff provides no evidentiary support to suggest that plaintiff's depression, after medication, caused functional impairments in the performance of her daily activities, social functioning, and concentration. See, e.g., Irelan v. Barnhart, 82 Fed. Appx. 66, 73-74 (3d Cir. 2003) (affirming finding that plaintiff does not suffer from "severe" mental impairment of depression and anxiety because plaintiff's treating physician did not refer plaintiff to mental health specialist and because no suggestion that plaintiff's mental health conditions contribute to functional limitations).

### B.     Residual Functional Capacity

Plaintiff claims that the ALJ erred by fashioning a residual functional capacity that was not based on the reports of plaintiff's treating physicians and plaintiff's testimony. (See Pl. Br., at 30-45).

Two important principles guide this Court's assessment of whether the ALJ properly

credited the testimony of plaintiff and plaintiff's treating physicians in fashioning the appropriate residual functional capacity. First, a claimant's testimony regarding his or her subjective pain is entitled to great weight, particularly when supported by competent medical evidence. Chrupcala v. Heckler, 829 F.2d 1269, 1276 n. 10 (3d Cir. 1987) ("Where a claimant's testimony as to pain is reasonably supported by medical evidence, the ALJ may not discount claimant's pain without contrary medical evidence."); Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979). Second, the ALJ must also accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (internal citations omitted). Indeed, neither the report of a treating physician nor the subjective complaints of pain by a claimant may be discredited unless there exists contrary medical evidence. Mason v. Shalala, 994 F.2d 1058, 1067-68 (3d Cir. 1993); Frankenfield, 861 F.2d at 408 (ALJ is bound by the determination of a treating physician except in limited circumstances, such as the presence of contradictory medical evidence); Witmer v. Barnhart, 2002 WL 485663, at *3 (E.D. Pa. March 28, 2002).

### 1. Failure to Credit Treating Physician's Reports

The ALJ found that the residual functional capacity questionnaires ("questionnaires") completed by plaintiff's attending podiatrist, Dr. Malay, and plaintiff's primary care physician, Dr. Bennett, were not entitled to significant weight at stage two of the sequential evaluation process. (See Tr., at 19). The ALJ rejected the conclusions expressed in these questionnaires for two reasons: (a) they were based upon plaintiff's intractable pain syndrome, which the ALJ found did not constitute a severe impairment; and (b) they were contrary to the "benign" clinical

findings associated with plaintiff's intractable pain syndrome. (Id.). Because the ALJ rejected these questionnaires as evidence of the severity of plaintiff's intractable pain syndrome, the ALJ never considered these reports in fashioning plaintiff's residual functional capacity. (Id.).

This Court finds that the ALJ's failure to discuss and evaluate the conclusions of Dr. Bennett's and Dr. Malay's residual functional capacity questionnaires at stage four of the sequential evaluation process was erroneous. Under applicable regulations, the ALJ was required to consider the reports of plaintiff's treating physicians, and then to determine the weight to be ascribed to these reports based upon an analysis of the appropriate factors. See 20 C.F.R. § 416.927(d)(2) (requiring ALJ to give more weight in general to opinions of treating sources and to articulate reasons for not giving opinion of treating source controlling weight); Blood v. Barnhart, 80 Fed. Appx. 773, 775-776 (3d Cir. 2003) (reversible error when ALJ fails to discuss documents and diagnoses of claimant's treating physicians in determining claimant's residual functional capacity); Fargnoli v. Massanari, 247 F.3d 34, 42-43 (3d Cir. 2001) (reversible error when ALJ both fails to mention and assess the credibility of clinical findings of claimant's treating physicians in formulating plaintiff's residual functional capacity).

In addition, this Court finds that neither of the ALJ's reasons for discrediting Dr. Bennett's and Dr. Malay's residual functional capacity questionnaires at stage two of the sequential evaluation process justify discrediting the entirety of these questionnaires at stage four of this process. See, e.g., Mason, 994 F.2d at 1067 (finding reversible error when grounds for rejecting medical findings lack substantial support in record). First, because the ALJ should have found plaintiff's intractable pain syndrome to be a severe impairment, it was improper to reject Dr. Malay's and Dr. Bennett's conclusions regarding plaintiff's residual functional capacity for

14

considering the effects of plaintiff's pain intractable syndrome in reaching these conclusions.

Second, the ALJ's finding that the functional limitations expressed in Dr. Malay's and Dr. Bennett's questionnaires lacked verification through objective laboratory findings is both methodologically and decisionally unsound. For instance, the requirement of objective laboratory findings to verify the etiology of plaintiff's pain symptoms overlooks the reality that intractable pain syndrome, whether characterized as myofascial pain, fibromyalgia, or chronic pain, often eludes such classic laboratory measurement; instead, the "objective" means for indexing the extent and severity of such pain involves the diagnostic techniques of recording a plaintiff's subjective complaints of symptoms and performing tenderness evaluations to substantiate such complaints.[7] See, e.g., Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996); Preston v. Secretary of Health and Human Serv., 854 F.2d 815, 817-818 (6th Cir. 1988); Jusino v. Barnhart, 2002 WL 31371988, at *7 (E.D. Pa. Oct. 21, 2002) (reversible error when plaintiff suffers from fibromyalgia and ALJ rejects plaintiffs' allegations of pain because no support from objective medical testing); American Medical Association, *Guides to the Evaluation of Permanent Impairment*, at 568 (5th ed. 2001) (stating that with chronic pain patients, "pain and pain-related activity restrictions may be dissociated from the biological insult to which a person was exposed and from any measurable biological dysfunction in that person's organs or body parts" and noting that pain is subjective and there is no "biological measure that correlates highly with individuals' complaints of pain"). In this instance, although classic laboratory tests have yet to ascertain the exact etiology of all of plaintiff's pain symptomology, the record is replete

---

[7] Defendant concedes the "unique subjectivity" of plaintiff's pain syndrome. (See Def. Br., at 19).

with objective findings suggesting both the existence and severity of plaintiff's pain symptoms, including the following: failed steroid and facet injections; a slow, antalgic gait; frequent medical findings of tenderness throughout plaintiff's muscles and joints; diagnoses/impressions of carpel tunnel syndrome, myofascial pain, osteoarthritis, arthropathy, fibromyalgia, and cervical radiculopathy at various stages in plaintiff's treatment history; diffuse pain responses to minor displays of motion; and modifications to plaintiff's often unsuccessful regimen of pain medication. (Tr., at 102, 118, 128-129, 131-132, 161-162, 164, 171, 177-178, 200, 220-221, 241-242, 251, 303); see Green v. Schweiker, 749 F.2d 1066, 1071 (3d Cir. 1984) (claimant seeking social security benefits need only produce medical signs and findings of some condition that could reasonably produce pain, rather than objective evidence of the pain itself).  Plaintiff's ubiquitous complaints of severe pain throughout her joints and muscles over a four-year period, with such pain rarely dipping below seven on a pain scale of ten,[8] provide further evidence in support of the validity of Dr. Malay's and Dr. Bennett's conclusions. See, e.g., Flanery v. Chater, 112 F.3d 346, 350 (8th Cir. 1997) ("a patient's report of complaints, or history, is an essential diagnostic tool"); SSA Memorandum, Fibromyalgia, Chronic Fatigue Syndrome, and Objective Medical Evidence Requirements for Disability Adjudication ("SSA Fibromyalgia Memorandum") (May 11, 1998) (recognizing vitality of reports from treating physicians that document symptoms in determining residual functional capacity of claimant suffering from fibromyalgia because such observations may be the only type of "medically acceptable clinical

---

[8] The notes from the Pain Center confirm the constancy and debilitating severity of plaintiff's pain. (Tr., at 161-185).

technique" available).⁹

In summary, the Court finds that by impermissibly rejecting the residual functional capacity questionnaires of plaintiff's treating physicians at the second stage of the sequential evaluation process, the ALJ also improperly failed to evaluate the conclusions in these questionnaires in assessing plaintiff's residual functional capacity. Furthermore, this Court rejects the reasons expressed by the ALJ for disregarding these questionnaires at the second stage of the sequential analysis as a basis for rejecting the *entirety* of the functional limitations expressed in these questionnaires in formulating plaintiff's residual functional capacity. Consequently, the ALJ must recalculate plaintiff's residual functional capacity in accordance with the proper weight to be given to the residual functional capacity questionnaires of plaintiff's treating physicians.

### 3. Failure to Credit Plaintiff's Testimony

Plaintiff argues that the ALJ erred by failing to credit fully plaintiff's testimony. (Pl. Br., at 42-43).

The ALJ refused to credit plaintiff's subjective complaints of pain for two major reasons: (i) inconsistencies between plaintiff's testimony concerning the severity of her pain and the

---

⁹Finally, this Court rejects defendant's suggestion that the reports of Dr. Malay and Dr. Bennett were fabricated to assist plaintiff in receiving SSA benefits. (See Def. Br., at 27). Although form medical reports in general constitute weak evidence in a SSA hearing, these reports were not generic forms recording the cursory conclusions of a first-time medical investigation. Instead, these reports were residual functional capacity questionnaires filled out by physicians who treated plaintiff on a regular basis. See, e.g., Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993). There is certainly no basis to suggest that the physician's assessments were meant to defraud a federal administrative agency into providing benefits to an undeserving candidate.

medical record; and (ii) inconsistencies within plaintiff's testimony. (Tr., at 22-23). This Court has already concluded that the ALJ erred by failing to consider plaintiff's intractable pain syndrome as a severe impairment and by failing to consider the functional limitations expressed by plaintiff's treating physicians in their disability questionnaires in determining plaintiff's residual functional capacity. Therefore, although this Court certainly does not mandate that the ALJ assign full credibility to plaintiff's testimony, the ALJ must nonetheless re-evaluate the credibility of plaintiff's testimony in light of this Court's instruction to consider the disability questionnaires of plaintiff's treating physicians and the combined effects of plaintiff's intractable pain syndrome, bilateral carpel tunnel syndrome, and various physical disorders in the ALJ's residual functional capacity analysis. See, e.g., Mason, 994 F.2d at 1068 (finding that ALJ's analysis of plaintiff's complaints of pain might have been significantly affected by ALJ's improper rejection of treating physician's medical report).

  **C.**  **Possible Employment**

Plaintiff finally contends that the ALJ erred by finding that plaintiff was able to perform her past relevant work as a pre-school teacher, sales associate, and assistant manager. (Pl. Br., at 45-48). Plaintiff argues that the hypothetical posed to the vocational expert failed to consider the entirety of plaintiff's functional limitations. (Id.).

This Court acknowledges the potential merit in plaintiff's argument. The ALJ crafted a residual functional capacity of light level work that may change upon acknowledgment of the severity of plaintiff's intractable pain syndrome, upon consideration of the functional limitations articulated by plaintiff's treating physicians, and upon re-evaluation of plaintiff's subjective complaints of pain. See, e.g., Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005) (noting

that limitations "that are medically supported and otherwise uncontroverted in the record, but that are not included in the hypothetical question posed to the expert, preclude reliance on the expert's response"). Accordingly, remanding this case to the ALJ to re-evaluate plaintiff's residual functional capacity in light of the principles announced in this decision moots plaintiffs' current argument as to the ALJ's reliance on the vocational expert's testimony.

### III.     Conclusion

For the preceding reasons, this Court grants plaintiff's motion for summary judgment and denies defendant's motion for summary judgment. As such, the Court vacates the decision of the ALJ and remands for a decision consistent with this opinion. On remand, the ALJ is instructed to treat plaintiff's intractable pain syndrome and bilateral carpel tunnel syndrome as severe impairments; to consider in a manner consistent with this opinion the residual functional capacity questionnaires of plaintiff's treating physicians in formulating plaintiff's residual functional capacity; and to re-evaluate the credibility of plaintiff's testimony. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTOINETTE S. McNEIL | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO.   04-5180 |
| JOANNE B. BARNHART, | : | |
| Commissioner of Social Security | : | |

**ORDER**

AND NOW, this 10th day of November 2005, upon consideration of both parties cross-motions for summary judgment (Doc. No. 10-11), it is hereby ORDERED as follows:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 10) is GRANTED. The decision of the ALJ is vacated and the case is remanded for the ALJ to classify plaintiff's intractable pain syndrome and bilateral carpel syndrome as severe impairments; to consider in a manner consistent with this opinion the residual functional capacity questionnaires of plaintiff's treating physicians in formulating plaintiff's residual functional capacity; and to re-evaluate the credibility of plaintiff's testimony based upon this Court's opinion.

2. Defendant's Motion for Summary Judgment (Doc. No. 13) is DENIED as moot.

3. The Clerk of Court is directed to mark this action CLOSED for statistical purposes.

BY THE COURT:

/s/
Legrome D. Davis, J.